IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:20-cv-00212-M

| | | |
|---|---|---|
| LAWRENCE SMITH, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | ORDER |
| | ) | |
| HATTERAS/CABO YACHTS, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the court on Defendant's Motion to Dismiss Count II of Plaintiff's Complaint Pursuant to Fed. R. Civ. P. 12(b)(6) [DE 16]. The parties have stipulated—and the court agrees—that the recently filed Amended Complaint [DE 34], which added allegations concerning the court's subject-matter jurisdiction, does not render the motion moot. Defendant contends that Plaintiff fails to state a plausible claim for violation of North Carolina's Unfair and Deceptive Trade Practices Act ("UDTPA"), which is set forth in Count II of the pleading. Plaintiff counters that his allegations, taken as true, are sufficient to state a plausible claim against the Defendant. For the reasons that follow, Defendant's motion is granted.

**I.   Background**

   A.   Plaintiff's Factual Allegations

The following are factual allegations (as opposed to statements of bare legal conclusions, unwarranted deductions of fact, or unreasonable inferences) made by the Plaintiff in the operative Amended Complaint (DE 34), which the court must accept as true at this stage of the proceedings pursuant to *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

On August 7, 2019, Plaintiff entered into a Purchase Agreement (the "Agreement") with the Defendant for the construction and purchase of a 2021 model Hatteras M98 Hull 101 ("Vessel"). The purchase price under the Agreement, $10,100,00.00, was to be paid in multiple installments. The first two installments of $1,010,000.00 and $1,515,000.00 were timely paid by Plaintiff on August 8, 2019 and January 23, 2020, respectively. The Agreement provides that the "Estimated Delivery Date" for the Vessel was to be approximately February 15, 2021. This date was subject to modification due to change orders, but no change orders were ever issued. Clause 20 of the Agreement provides as follows:

> FORCE MAJEURE. Notwithstanding any other provision of this Agreement, Builder shall have no liability for, and shall not be deemed to be in default, under this Agreement as a result of any nonperformance or delay in performance caused by circumstances beyond Builder's control including, but not limited to, acts of God, fire, flood, war, government action, labor trouble or shortage, inability to obtain materials, equipment or transportation, or failure of Builder's suppliers to furnish goods. In the event the accumulated time related to such an event or events exceeds 120 days, Builder and Purchaser each have the right to rescind the contract, whereupon the Purchaser shall be entitled by written election made within 7 days of rescission to either:
>     a. to take and complete the Yacht without further liability to the Builder; or
>     b. to require repayment of all deposits paid by the Purchaser to the Builder.
> Upon the exercise of either option, all further obligations under this Agreement are deemed satisfied.

On March 23, 2020, a representative and/or employee and/or agent of the Defendant, Thomas Sanders, advised the Plaintiff that due to the COVID-19 pandemic, the manufacturing building was closed as of March 20, 2020 and would remain closed. On June 18, 2020, Mr. Sanders advised Plaintiff that the manufacturing building had reopened on May 26, 2020. Thus, the manufacturing building was shut down for sixty-seven days, during which no work was done on the Vessel.

2

On July 9, 2020, Mr. Sanders forwarded to Plaintiff an Amendment to the Purchase Agreement ("Amendment"). The Amendment reflected a new estimated delivery date of October 25, 2021. The new estimated delivery date was more than eight months after the delivery date in the original Agreement. The Amendment cited Executive Order 12, issued by the Governor of the State of North Carolina, mandating the closure of non-essential businesses due to COVID-19 as the cause for the delay in delivery. Pursuant to Clause 20 of the Agreement, on July 20, 2020, Plaintiff exercised his right to rescind the Agreement. Plaintiff notified Defendant in writing that he was pursuing option (b) under Clause 20 of the Agreement and demanded repayment of all deposits paid by the Purchaser/Plaintiff to the Builder/Defendant, which totaled $2,525,000.00. All conditions precedent to the Plaintiff's right to rescind the contract were duly satisfied.

To date, Defendant has not paid the amount due nor provided a meaningful response to Plaintiff's demand. In accordance with Clause 17, the Mediation Clause of the Agreement, Plaintiff and Defendant engaged in mediation pursuant to the Rules of the American Arbitration Association, but on November 5, 2020, the mediator declared an impasse.

B.  Procedural History

Based on these allegations, Plaintiff initiated this action on November 16, 2020. DE 1. In lieu of an Answer, Defendants filed the present motion on December 28, 2020 seeking dismissal of Count II for the Plaintiff's purported failure to allege a plausible UDTPA claim. Plaintiff counters that his allegations, taken as true, plausibly assert the claim and that the cases on which Defendant relies primarily involve Rule 56 analyses or, otherwise, are inapposite. Defendant replies that its cases are strikingly similar to this case and Plaintiff's proffered cases are not.

**II.    Legal Standards**

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of

3

the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that "Rule 8 marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions." *Id.* at 678–79.

To survive a Rule 12(b)(6) motion, the plaintiff's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a plaintiff's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level," i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)); *Francis v. Giacomelli*, 588 F.3d 186, 193 (4th Cir. 2009) ("'naked assertions' of wrongdoing necessitate some 'factual enhancement' within the complaint to cross 'the line between possibility and plausibility of entitlement to relief.'" (quoting *Twombly*, 550 U.S. at 557)).

4

### III. Analysis

Defendant contends that Plaintiff's allegations underlying his UDTPA claim are conclusory or, otherwise, insufficient to demonstrate the "fraud" or other extra-contractual conduct necessary to support a plausible claim. The court agrees.

To state a plausible claim in violation of the UDTPA, a plaintiff "must allege (1) an unfair or deceptive act or practice (2) in or affecting commerce (3) which proximately caused injury to the plaintiff or his business." *Rahamankhan Tobacco Enterprises Pvt. Ltd. v. Evans MacTavish Agricraft, Inc.*, 989 F. Supp. 2d 471, 477 (E.D.N.C. 2013) (citing N.C. Gen. Stat. § 75–1.1). An act is deceptive "if it has a tendency or capacity to deceive." *Id.* (citing *Dalton v. Camp*, 353 N.C. 647, 656, 548 S.E.2d 704, 711 (2001)). An act is unfair "if it offends established public policy," "is immoral, unethical, oppressive, unscrupulous, or substantially injurious to consumers," or "amounts to an inequitable assertion of ... power or position." *Id.* (quoting *Carcano v. JBSS, LLC*, 200 N.C. App. 162, 172, 684 S.E.2d 41, 50 (2009)). "Whether an act or practice is unfair or deceptive under the UDTPA is a question of law for the court." *Id.* (quoting *Kelly v. Ga.–Pac., LLC*, 671 F.Supp.2d 785, 798–99 (E.D.N.C. 2009)).

Relevant here, "[a] breach of contract, even if intentional, is insufficient to state a UDTPA claim." *Id.* at 478 (citations omitted); *see also Haynes v. B & B Realty Grp., LLC*, 179 N.C. App. 104, 112, 633 S.E.2d 691, 696 (2006) ("Even a party who intentionally breaches a contract is not, without more, liable for such conduct under the North Carolina Unfair Trade Practices Act.") (quoting *Di Frega v. Pugliese*, 164 N.C. App. 499, 507, 596 S.E.2d 456, 462 (2004)). Typically, North Carolina law "does not permit a party to transmute a breach of contract claim into a . . . UDTPA claim . . . because awarding punitive or treble damages would destroy the parties' bargain . . . ." *Barbour v. Fid. Life Ass'n*, 361 F. Supp. 3d 565, 574 (E.D.N.C. 2019) (citing *PCS Phosphate*

5

*Co. v. Norfolk S. Co.*, 559 F.3d 212, 224 (4th Cir. 2009) and *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (collecting cases)).

However, if substantial aggravating circumstances accompany a breach of contract, then such circumstances may create a claim for violation of the UDTPA. *Id.* (citations omitted). "Aggravating circumstances include conduct of the breaching party that is deceptive." *Ellis v. Louisiana-Pac. Corp.*, 699 F.3d 778, 787 (4th Cir. 2012) (quoting *Becker v. Graber Builders, Inc.*, 149 N.C .App. 787, 561 S.E.2d 905, 910-11 (2002)). "[I]n determining whether a particular act or practice is deceptive, its effect on the average consumer is considered." *Id.* Notably, "a broken promise is unfair or deceptive only if the promisor had no intent to perform when he made the promise." *Gilbane Bldg. Co. v. Fed. Rsrv. Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 903 (4th Cir. 1996); *see also Interstate Narrow Fabrics, Inc. v. Century USA, Inc.*, 218 F.R.D. 455, 465 (M.D.N.C. 2003) ("a breach of contract can constitute an unfair or deceptive trade practice if the promisor enters into the contract with no intent to perform under the contract."); *Patterson v. Flagstar Bank, FSB*, No. 3:12-CV-00707-MOC, 2013 WL 5217616, at *8 (W.D.N.C. Sept. 17, 2013) ("the only way a contract claim could give rise to a UDTPA claim is if the plaintiff alleged that defendant never intended to fulfill its contractual obligations").

In this case, the Plaintiff supports his UDTPA claim by alleging:

29. On August 8, 2019, and January 23, 2020, Plaintiff paid the first two installments deposit [sic] totaling $2,025,000.00.

30. On July 20, 2020, Plaintiff attempted to rescind the contract under Clause 20 of the Agreement, demanding return of his deposits.

31. Despite the circumstances of recission being clearly met, Defendant has refused to return the deposit monies. No explanation has been provided other than that Defendant does not have the funds.

6

> 32. Defendant entered into this contract with the Plaintiff knowing that it would not be able to refund the deposits if the contract were rescinded pursuant to Clause 20.

Am. Compl., DE 34. Even taking these allegations as true and viewing the pleading in the light most favorable to the Plaintiff for this Rule 12(b)(6) analysis (*Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009)), the court finds the allegations insufficient to state the "unfair or deceptive act" prong necessary for a UDTPA claim.

The court finds, first, that by alleging Defendant entered a contract promising to take an action it knew it could not (or would not) take, Plaintiff essentially accuses Defendant of "fraud" as it is defined under North Carolina law. *See Wilson v. Dryvit Sys., Inc.*, 206 F. Supp. 2d 749, 755 (E.D.N.C. 2002), *aff'd*, 71 F. App'x 960 (4th Cir. 2003) (the elements necessary to allege "actionable fraud are: (1) false representation or concealment of a material fact; (2) reasonably calculated to deceive; (3) made with intent to deceive; (4) which in fact does deceive; and (5) resulting in damage to the injured party.") (citing *Ragsdale v. Kennedy*, 286 N.C. 130, 209 S.E.2d 494, 500 (1974) and *Helms v. Holland*, 124 N.C. App. 629, 478 S.E.2d 513, 516 (1996)).

With respect to claims based on fraud, "the Federal Rules of Civil Procedure create a heightened pleading standard for fraud claims brought in federal court, including such claims brought pursuant to state law." *Diop v. BMW of N. Am., LLC*, -- F. Supp. 3d --, 2021 WL 51757, at *5 (E.D.N.C. Jan. 6, 2021) (citing *Topshelf Mgmt., Inc. v. Campbell-Ewald Co.*, 117 F. Supp. 3d 722, 725-26 (M.D.N.C. 2015)). Under this rule, parties alleging fraud "must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." *Id.* (quoting Fed. R. Civ. P. 9(b)). Parties must "plead with particularity 'the time, place, and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby.'" *Id.* (quoting *U.S. ex rel. Wilson v. Kellogg Brown & Root, Inc.*, 525 F.3d 370, 379 (4th Cir. 2008)).

7

Notably, these requirements "extend to claims under the UDTPA when such claims are predicated on an underlying fraud." *Id.* (citing *Topshelf*, 117 F. Supp. 3d at 731-32).

Here, Plaintiff's allegations are deficient in asserting the "particularity" necessary to state a plausible claim for a UDTPA violation; while the time and content are described by the contract formation allegations (and the place is implied), the identity of the person responsible for the false representation "and what he obtained thereby" are not stated. Thus, the court finds the allegation conclusory in stating merely an element of the UDTPA claim—i.e., that "the promisor enter[ed] into the contract with no intent to perform under the contract." *See Interstate Narrow Fabrics, Inc.*, 218 F.R.D. at 465. In other words, the allegation does not provide "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal conduct." *Twombly*, 550 U.S. at 555–56 (brackets omitted). As such, the claim is insufficient to meet both Rule 8 and Rule 9(b) standards.

## IV. Conclusion

The court concludes that Plaintiff fails to state a plausible UDTPA claim as set forth in Count II of the Amended Complaint. Therefore, Defendants' motion is GRANTED and the UDTPA claim is dismissed with prejudice.

SO ORDERED this 11th day of June, 2021.

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE